DISTRICT OF COLUMBIA, Appellant,

v.

**Reginald DUNMORE, Appellee.**

**No. 98–CO–1589.**

District of Columbia Court of Appeals.

Submitted March 28, 2000.

Decided April 20, 2000.

---

Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Sharlene E. Williams, Assistant Corporation Counsel, filed a brief for appellant.

No brief was filed on behalf of appellee.

Before FARRELL and GLICKMAN, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

Following a criminal trial that ended in acquittal of appellee (Dunmore) on the lone charge of possession with intent to distribute cocaine, the trial court granted Dunmore's motion for return of property (alleged drug sale proceeds) despite the fact that the District of Columbia had instituted civil forfeiture proceedings soon after Dunmore's arrest. *See* D.C.Code § 33–552 (1998). The court rejected the District's argument that initiation of those proceedings divested it of power to order return of the property under Super. Ct. Crim. R. 41(g). Further, although the court purported to apply the standards of proof of § 33–552 in ruling on Dunmore's motion, it refused to let the District engage in discovery to which it would have been entitled in a civil forfeiture proceeding.

■ We hold that the court erred in granting the Rule 41(g) motion, because once the District has timely initiated civil forfeiture proceedings under § 33–552, those proceedings constitute the exclusive means by which the ownership of forfeitable property is to be determined.

**I.**

Dunmore was arrested on August 27, 1997, and charged with possession with intent to distribute cocaine (PWID). Taken from him at the time of his arrest was $821 in cash. After he was indicted in

September of 1997 on one count of PWID, the District of Columbia initiated proceedings on November 24, 1997, for civil forfeiture of the money. The criminal case (prosecuted by the United States) proceeded to trial in February of 1998, and Dunmore was acquitted. Thereafter, without notice to the District, his attorney moved for return of the $821 under Super. Ct. Crim. R. 41(g).[1] The trial court initially granted the motion, but then, on the District's motion to reconsider pointing out its lack of notice and opportunity to intervene, directed the District to furnish "a proffer of what evidence, if any, other than the evidence adduced at trial, the government would introduce at a hearing on [Dunmore's] motion to demonstrate that the money seized from him was involved in an illegal narcotics transaction." The District responded by arguing that, because it had commenced civil forfeiture proceedings under § 33–552, the court lacked subject matter jurisdiction to order return of the property in the criminal case and that, even if it retained such power, the District was entitled to discovery regarding Dunmore's acquisition of the money under the rules of civil procedure.

The trial court rejected both arguments. It treated the proceeding before it as something of a hybrid, combining features of a Rule 41(g) motion and a civil forfeiture trial. Thus, while rejecting the District's argument that it was "entitled to discovery in a post-trial motion for return of property," the court purported to apply the evidentiary standards of the civil forfeiture statute, D.C.Code § 33–552, including the presumption of forfeitability that arises when currency has been found in close proximity to forfeitable controlled substances. Section 33–552(a)(7)(B). But it found that Dunmore's testimony at trial had overcome the presumption, and that the District—having failed to proffer any additional evidence—had not met its puta-

---

1. In relevant part. Rule 41(g) provides that "[a] person aggrieved ... by the deprivation of property may move the Court for the return of [the] property ... on the ground that such person is entitled to lawful possession of the property."

tive burden of proof on the ultimate issue. (As we explain later, the trial court misapplied the burden of proof imposed by the statute.)  The court therefore reaffirmed its order granting the Rule 41(g) motion, but stayed its order pending an appeal by the District.

## II.

■ Although a Rule 41(g) motion is ancillary to the criminal proceeding in which it is brought, *Stevens v. United States*, 462 A.2d 1137, 1138 (D.C.1983), and the District was not a party to the criminal case, the trial court in effect let the District intervene to oppose the motion for return of property, and we perceive no jurisdictional problem with the District pursuing this appeal.[2]  The District contends that once it instituted proceedings under § 33–552 to forfeit ownership of the $821, the trial court no longer had authority to order its return in the criminal case. Examination of the court's authority under Rule 41(g) as interpreted by our prior decisions, and of the text of § 33–552, persuades us that the District is correct.

In *United States v. Wilson*, 176 U.S.App.D.C. 321, 540 F.2d 1100 (1976) (*Wilson I*), the Circuit Court concluded that "the district court has both the jurisdiction and duty to return" property seized in connection with criminal proceedings once the proceedings have terminated and the property is no longer pertinent to a criminal prosecution.  *Id.* at 324, 540 F.2d at 1103.  In *Wilson v. United States*, 424 A.2d 130 (D.C.1980) (*Wilson II*), this court "adopted [that] position" in rejecting a claim that the police department property clerk statute, D.C.Code §§ 4–151 *et seq.* (1973), which authorized the property clerk to return property upon application for it by a rightful claimant, "was ... intended

to deprive the [Superior Court] of any of its substantive or ancillary jurisdiction," including over a motion for return of property.  *Id.* at 132–33.  We further rejected an argument that the trial court lacked "personal jurisdiction to rule on a post-conviction motion for the return of property when [only] the United States is before it" as a party, not the police department, an agent of the District of Columbia government.  Rather, we held that the police hold seized property "as agent for, and subject to the direction of, the trial court under whose authority it was seized." Property seized pursuant to law (whether a search warrant or a search incident to arrest) is held "on behalf of the court" such that " 'possession by the [police] officer is in contemplation of the law possession by the court.' "  *Id.* at 133 (citation omitted).

In *Alleyne v. United States*, 455 A.2d 887 (D.C.1983), we applied the holding of *Wilson II* (in which the defendant had been convicted) to a case in which the government had dismissed the prosecution before trial.  Even where no trial has occurred, we explained, "[i]t is a simple enough matter for a judge to hold a hearing [on a motion for return of property], ... eliciting the facts just as would be done at trial."  *Id.* at 889.

In contrast to these decisions is *Stevens v. United States, supra*, where the seized money had been returned to someone other than the defendant before trial (*i.e.*, the complaining witness).  We held it "inappropriate [in that setting] for the trial court to entertain a motion for return of property ancillary to the criminal proceeding."  462 A.2d at 1138 (footnote omitted). The reason was that in such a case "a hearing on the motion would require the

---

2.  In general an intervenor has all the rights of a party, including to appeal.  *See* 59 Am. Jur. 2d *Parties* § 177 (1971).

After the appeal was noted, Dunmore's retained attorney requested and was granted leave to withdraw from his representation. This court instructed Dunmore to advise it as to the identity of new counsel or whether he intended to proceed *pro se* in the appeal. Dunmore filed no response to that order or to a subsequent order to show cause.  The case was therefore scheduled for consideration by this division on the District's brief alone.

criminal trial judge[,] in effect, to try what is essentially a civil action and consider entering judgment against one or more parties rather than simply ordering a return of property." *Id.* at 1139. "[T]he type of proceeding ... necessary to resolve the issue raised would no longer be ancillary in nature," for "[t]here are at least two competing claimants, and the question of responsibility for the apparently premature release of the money might have to be resolved." *Id.* (footnote omitted).

All told, then, our decisions affirming the "jurisdiction and duty" of the trial court to return property under Rule 41(g) have done so in circumstances where "[i]t makes for economy of judicial effort to have the matter disposed of in the criminal proceeding," *Wilson I,* 176 U.S.App.D.C. at 325, 540 F.2d at 1104, and where the "ancillary" nature of the hearing would not be supplanted by an "essentially ... civil action" in which the rights of "competing claimants ... [are] resolved." *Stevens,* 462 A.2d at 1139.[3] Importantly, in *Wilson I,* whose analysis of the corresponding federal Rule 41 authority (Fed.R.Crim.P. 41(e)) we found "to be particularly persuasive," *Wilson II,* 424 A.2d at 132 n. 4, the Circuit Court appeared to take for granted that a competing claim by the government through timely civil forfeiture proceedings would restrict the trial court's Rule 41(e) authority:

> It goes without saying, that if the Government seeks to forfeit the property a proper proceeding should be instigated to accomplish that purpose. A claim by

the owner for the return of his property cannot be successfully resisted by asserting that the property is *subject* to forfeiture. If the property is subject to forfeiture, appropriate proceedings should be started expeditiously.

*Wilson I,* 176 U.S.App.D.C. at 325, 540 F.2d at 1104 (citation and footnote omitted).[4]

D.C.Code § 33–552, which the District of Columbia invoked in this case, sets forth detailed procedures for such forfeiture. As applicable here, the statute renders forfeitable "[a]ll cash or currency which has been used, or intended for use, in violation of [the District of Columbia Controlled Substances Act]." Section 33–552(a)(6). In sharp contrast to Rule 41(g), concerning property possession of which " 'is in contemplation of the law possession by the court,' " *Wilson II,* 424 A.2d at 133 (citation omitted), the statute declares that property (other than controlled substances) "taken or detained under this section ... is deemed to be in *the custody of the Mayor.*" Section 33–552(d)(2) (emphasis added).[5] Upon seizure of the property, the Mayor shall "institute[ ] promptly" proceedings "for disposition [of the property] in accordance with law." Sections 33–552(c) & (d)(2)(C). Those proceedings, which we have termed "civil and remedial" in nature, *$345.00 in United States Currency v. District of Columbia,* 544 A.2d 680, 682 (D.C.1988), begin once "a proper showing of probable cause for the seizure [has been] made." Section 33–552(d)(3)(A).[6] The Mayor must give notice

---

3. In *Stevens,* we relied partly on *Morrow v. District of Columbia,* 135 U.S.App.D.C. 160, 417 F.2d 728 (1969), in which the court had described an "ancillary" proceeding as one where, *inter alia,* the matter "can be determined without a substantial new fact-finding proceeding" and "determination of the ... matter through an ancillary order would not deprive a party of a substantial procedural or substantive right." *Id.* at 172, 417 F.2d at 740.

4. Although the point has no bearing on our decision, we note that in federal court the

Rule 41(e) authority yields to civil forfeiture by express operation of Fed.R.Crim.P. 54(b)(5). *See United States v. Price,* 286 U.S.App.D.C. 249, 914 F.2d 1507 (1990). There is no corresponding Superior Court rule.

5. Such property also "shall not be subject to replevin." Section 33–552(d)(2).

6. This showing presumably may be made by the government in the accompanying criminal case if one has been instituted: otherwise the

of the seizure and of his intention to forfeit the property by publication in a local newspaper and registered mailing to any party known (actually or constructively) to have a right of claim to the seized property. Section 33–552(d)(3)(A). Such a party may then file a claim with the Mayor secured by a bond representing a specified portion of the property's fair market value. Section 33–552(d)(3)(B). If a claim is filed, the Mayor through the Corporation Counsel must apply to the Superior Court for forfeiture "in accordance with the rules of the Superior Court." Section 33–552(d)(3)(E). That application, termed a "libel of information," Super. Ct. Civ. R. 71A–I, results in a civil action in Superior Court: "the Civil Rules of [Procedure] shall govern, so far as practicable, actions for … forfeiture … as set forth, in this Rule." Rule 71A–I (e).

Significant hurdles confront the party opposing forfeiture under the statute. First, "moneys, coins and currency found in close proximity to forfeitable controlled substances … are presumed to be forfeitable under [§ 33–552]," with "[t]he burden of proof … upon any claimant of the property to rebut this presumption." Section 33–552(a)(7)(B). More broadly, "[i]n all suits or actions brought for forfeiture of any property seizure under this chapter[,] … the burden of proof shall be on the claimant once the Mayor has established probable cause [for the seizure]." Section 33–552(d)(3)(G). Once forfeiture has been ordered and become final, a claimant may file "a petition for remission or mitigation" with the Mayor, § 33–552(d)(3)(F), which the Mayor need grant only if he makes specified findings such as that "the forfeiture was incurred … without any intention on the part of the petitioner to violate the law." Section 33–552(d)(3)(F)(i).

The statutory procedure thus summarized cannot reasonably be considered "ancillary" to the criminal trial in which Dunmore was acquitted. Procedurally, it calls for application of very different rules, see Super. Ct. Civ. R. 71A–I (e), including those providing for civil discovery. See Haynes v. District of Columbia, 503 A.2d 1219, 1224 (D.C.1986) (presupposing the availability of discovery in § 33–552 proceedings; reversing for imposition of excessive sanction for discovery violation); Gardiner v. District of Columbia, 499 A.2d 455, 457 (D.C.1985) (same). Most significant, in contrast to the allocation of proof at a criminal trial, is the shift of the burden of proof to the claimant once the District has shown probable cause for the seizure. (The trial court thus erroneously placed the burden of proof on the District, an error the District repeats by asserting in its brief that "it was the government's burden to establish … that it was entitled to the forfeiture by a preponderance of the evidence.")[7] The resultant proceeding bears no resemblance to the "simple matter" of eliciting facts on a motion for return of property, Alleyne, 455 A.2d at 889,

---

statute envisions a preliminary showing of probable cause by the District.

**7.** For this proposition the District cites $345.00 in U.S. Currency, supra, in which this court held that, given the civil nature of § 33–552 forfeiture, "the government need prove its case only by a preponderance of the evidence." 544 A.2d at 682. That decision, however, was rendered before § 33–552 was amended by the legislature to place the burden of proof on the claimant once the District has established probable cause for the seizure. See D.C. Law 7–162, § 2, Sept. 29, 1988, 35 D.C.Reg. 5733. This case, of course, presents no issue regarding the constitutionality of the burden shift, and we express no opinion on it. But see United States v. $250,000 in U.S. Currency, 808 F.2d 895, 900 (1st Cir.1987) (Wisdom, J.) (rejecting, along with "[e]very circuit that has considered the question," due process challenge to allocation of burden of proof in civil forfeiture, citing Lavine v. Milne, 424 U.S. 577, 585, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976)). Nor does the case require us to consider whether, for any purpose, this court's description of § 33–552 as "civil and remedial" would have to be revised. Compare, e.g., United States v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), with United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

when no forfeiture is being sought. *See Morrow, supra* note 3 (motion is "ancillary" to criminal case where matter "can be determined without a substantial new fact-finding proceeding"). And the reason for the difference is substantive, because instead of only the criminal defendant laying claim to the property, his right to it has been disputed by the government's seizure of the property (with possession immediately "deemed" to be in the Mayor § 33–552(d)(2)) and prompt institution of forfeiture proceedings. *See Stevens,* 462 A.2d at 1139 (Rule 41(g) inapplicable where "competing claimants" vie for property).

In short, the trial court's assertion of continuing jurisdiction here to order return of money under Rule 41(g) despite the commencement of forfeiture proceedings is incompatible with the statutory framework for deciding ownership of forfeitable property. *See* D.C.Code § 16–701 (1997) (Superior Court rules must be "consistent with statutes applicable to [the] business [of the court]"); *Flemming v. United States,* 546 A.2d 1001, 1004 (1988). The trial court appeared to recognize this conflict by incorporating § 33–552 standards into the less formal Rule 41(g) proceeding, but the effect—besides erroneously placing the burden of proof on the government—was to deny the District discovery it would have had in proceedings under the statute and Rule 71A–I.[8] The trial court did not dispute that forfeiture proceedings had been "instituted promptly" by the District. We hold that the proper course was for the court to deny the Rule 41(g) motion and leave entitlement to the property to resolution in those proceedings.

The order of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

8. In its motion to reconsider, the District explained that through discovery it would pursue answers to questions jurors themselves had asked (in writing) during trial about Dunmore's defense that the money found on him was the proceeds of a settlement he had won in a personal injury case:

> For example, in a note, the jury asked "Where was the settlement check cashed?" ... Whether the intent of this question was

"where was the check cashed" or "was the check cashed (at all)" is immaterial. The fact remains that the source of the funds went to reasonable doubt that [prevented] a conviction in the criminal case, but that the District, through discovery would explore. Unlike the criminal jury, the District would not be forced to accept Dunmore's testimony at face value.